UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Adam H. Nagle

    v.                                        Civil No. 08-cv-432-SM[1]

Jorgenson, et al.

**REPORT AND RECOMMENDATION**

    Pro se plaintiff Adam H. Nagle has filed a complaint, pursuant to 42 U.S.C. § 1983, alleging that defendants have violated his rights under the First and Eighth Amendments to the United States Constitution and New Hampshire law (document no. 1). Seeking injunctive and monetary relief, he brings this action against six employees of the New Hampshire State Prison ("NHSP"): Warden Richard M. Gerry[2]; corrections officer Jorgenson (first name unknown); and four unnamed corrections officers.[3]  In

---

[1] Nagle has filed two related actions, civil nos. 08-cv-413-JL and 08-cv-445-JL, in which he alleges similar claims against additional defendants.

[2] I liberally construe this action to be brought against Gerry, who is identified in the body of the complaint.

[3] The body of the complaint refers to Parent. Because Nagle names Parent as a defendant in a separate action, civil no. 08-413-JL, in which he alleges similar claims against him, I construe this action to be brought solely against Wrenn, Gerry,

addition, I liberally construe the complaint to name as a defendant William L. Wrenn, Commissioner of the New Hampshire Department of Corrections ("NHDOC").

The complaint is before me for preliminary review to determine whether, among other things, it states a claim upon which relief might be granted. See 28 U.S.C. § 1915A; United States District Court for the District of New Hampshire Local Rule ("LR") 4.3(d)(2). For the reasons stated below, I find that Nagle has stated the following claims against Gerry, Jorgenson and the four unnamed corrections officers in their individual capacities: (1) Eighth Amendment claims alleging use of excessive force; (2) First Amendment retaliation claims alleging denial of the right to petition the government for redress of grievances; (3) and related state law claims alleging intentional infliction of emotional distress. I recommend dismissal of all remaining claims.

### Standard of Review

Under this court's local rules, when an incarcerated plaintiff commences an action pro se and in forma pauperis, the magistrate judge is directed to conduct a preliminary review. LR

---

Jorgenson and the four unnamed corrections officers.

4.3(d)(2). In conducting the preliminary review, the court liberally construes pro se pleadings, however inartfully pleaded. See Erickson v. Pardus, ___ U.S. ___, 127 S. Ct. 2197, 2200 (2007) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972) to construe pro se pleadings liberally in favor of the pro se party). See also Castro v. United States, 540 U.S. 375, 381 (2003) (noting that courts may construe pro se pleadings so as to avoid inappropriately stringent rules and unnecessary dismissals of claims). "The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled." Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997).

At this preliminary stage of review, all factual assertions made by the plaintiff and inferences reasonably drawn therefrom must be accepted as true. See Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996)(stating the "failure to state a claim" standard of review and explaining that all "well-pleaded factual averments," not bald assertions, must be accepted as true). This review ensures that pro se pleadings are given fair and

meaningful consideration.

## Background

This action stems from Nagle's confinement in the secured housing unit ("SHU") at the NHSP and corrections officers' alleged use of excessive force against him while he was experiencing seizures.  Upon entering SHU, Nagle notified officers that he suffered from a medical condition that caused him to experience seizures.  He previously suffered two seizures while confined at the NHSP, and during one episode he sustained injuries to his head and neck and required hospitalization. While confined in a cell on "A" tier, Nagle and corrections officers informed his cellmate(s)[4] of his medical condition and instructed them to notify officers by flagging for assistance when Nagle was experiencing a seizure.  The officers allegedly explained that "flagging" was waiving a white sheet or towel outside a cell door to alert officers of the need for emergency assistance.  On several occasions, Nagle's cellmates on "A" tier flagged officers for emergency assistance when he was experiencing seizures, however, fifteen to thirty minutes elapsed

---

[4]I construe Nagle's reference to "occupant" to mean cellmate(s).

before officers responded.

The incident at issue in this action occurred in June 2008, while Nagle was confined in SHU and was awaiting available bed space in the Hancock Building. During that time, Parent allegedly was in charge of SHU, and all other officers reported to him. While Nagle was experiencing a seizure, officers allegedly entered his cell and ordered his cellmate to leave. Several other officers, including Parent and Jorgenson, were standing at the cell door.[5] At that time, witnesses allegedly recounted, Nagle was actively in a seizure and experiencing convulsive muscle movement along with clenched hands and eyes rolling into the back of his head. He allegedly was nonresponsive.

Parent allegedly held Nagle by the wrists and, when his arms convulsively pulled away, ordered Jorgenson and the other officers to "take him down." The officers and Parent pulled Nagle off of his bed and onto the floor, face first. Parent then ordered the officers to flip Nagle onto his back while he was still actively seizing. Parent further ordered the officers to

---

[5] Nagle allegedly is unable to identify certain officers who entered his and/or stood at the door and will attempt to identify the unnamed officers through discovery.

pin Nagle down by the arms, legs and head while Parent strattled him.  At that point, while Jorgenson was kneeling on Nagle's right wrist with both knees and attempting to pin down his arm, Nagle experienced a seizure-induced muscle spasm and lifted the officer off of the ground.  The other officers knelt with full weight on Nagle's arms, legs, head, neck and groin, and Parent continued to strattle Nagle and began slapping his chest and face.  Within a few minutes, the seizure allegedly faded, and Nagle was checked by a nurse and given ice for a large purple lump on his head.  As a result of defendants' actions, Nagle allegedly sustained injuries to his head, forehead, neck, right elbow, left shoulder and groin.  He also allegedly sustained injuries to his joints from  hyperextension and endured unnecessary pain and suffering.

    Over a period of approximately four to five months, Nagle claims, he repeatedly reported the deprivations and resulting injuries to Gerry and other NHSP officials, however, they failed to adequately remedy the problem or take sufficient corrective action.  Nagle further claims that "he had his attempts at exhausting his administrative remedy thwarted on multiple occasions."  His confidential requests to the warden allegedly

were intercepted, and grievances filed "through the chain of command" and with "the Commissioner and Warden [were] returned to no avail."  Lastly, Nagle alleges that he was "harassed, browbeaten and run in circles" with regard to his attempts to exhaust his administrative remedies.  Nagle now brings this civil rights action, alleging that defendants' acts and omissions violate his rights under Section 1983 and New Hampshire law.

## Discussion[6]

I. Section 1983 Claims

Section 1983 creates a cause of action against those who, acting under color of state law, violate federal law.  See 42 U.S.C. § 1983; Parratt v. Taylor, 451 U.S. 527, 535 (1981); Rodriguez-Cirilo v. Garcia, 115 F.3d 50, 52 (1st Cir. 1997).  In order to be held liable for a violation under Section 1983, a defendant's conduct must have been a cause in fact of the alleged constitutional deprivation.

A. Use of Excessive Force

In June 2008, Jorgenson and four unnamed NHSP corrections

---

[6]The claims as identified herein will be considered for all purposes to be the claims raised in the complaint.  If Nagle disagrees with this identification of the claims, he must do so by proper objection to this report and recommendation or by properly moving to amend his complaint.

officers allegedly used excessive force against Nagle while he was experiencing a seizure, thereby violating his Eighth Amendment right to be free from cruel and unusual punishment.

In a prison setting, the use of excessive force against a prisoner is analyzed under the Eighth Amendment prohibition against cruel and unusual punishment.  See Whitley v. Albers, 475 U.S. 312, 319-20 (1986).  See also See Davis v. Rennie, 264 F.3d 86, 98 n.9 (1st Cir. 2001) (citing Hudson v. McMillian, 503 U.S. 1, 4 (1992)("A convicted prisoner may bring a claim for use of excessive force under the Eighth Amendment.")  To state an Eighth Amendment claim for the use of excessive force by prison guards, an inmate must demonstrate "unnecessary and wanton infliction of pain."  Whitley, 475 U.S. at 319-20.  "[T]he core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  See Hudson, 503 U.S. at 7 (citing Whitley, 475 U.S. at 320-21).  To prevail on an excessive force claim, a plaintiff must show that the alleged use of force is "objectively sufficiently serious or harmful enough" to be actionable.  Hudson, 503 U.S. at 8; accord United States v. Walsh, 194 F.3d 37, 50 (2d Cir. 1999).  An excessive force claim

may be established even if the plaintiff does not suffer serious or significant injury, if he can demonstrate that the amount of force used is more than <u>de minimis</u>, or otherwise involves force "repugnant to the conscience of mankind."  <u>Hudson</u>, 503 U.S. at 9-10.

Here, Nagle alleges that in June 2008 while he was confined in SHU, Jorgenson and four unnamed NHSP corrections officers entered his cell and used excessive force against him while he was experiencing a seizure and while he was nonresponsive. Parent allegedly restrained Nagle and ordered Jorgenson and the other officers to "take him down."  Jorgenson and/or the unnamed officers allegedly demonstrated deliberate indifference to Nagle's safety by forcefully pulling him off of his bed and onto a concrete floor, face first, and pinning him down while he was experiencing a seizure.  Defendants allegedly further demonstrated indifference to Nagle's safety by flipping him onto his back while he was still actively seizing and pinning him down by the arms, legs and head while Parent strattled him.  In addition, defendants allegedly knelt with full weight on Nagle's right wrist, arms, legs, head, neck and groin, while Parent continued to strattle Nagle and began slapping his chest and

face.

As a result of defendants' actions, Nagle allegedly sustained injuries to his head, forehead, neck, right elbow, left shoulder, joints and groin and endured unnecessary pain and suffering. Nagle claims that because he was on a secure mattress with blankets and padding to protect his head, it was unnecessary for defendants to move him. Defendants allegedly are trained in basic emergency response and should have been able to understand the possibility of injury.

Nothing in the record suggests that Nagle provoked the incident or otherwise posed an immediate threat to the safety of the corrections officers or the security of the prison. Nor is there any indication that excessive force was used by the officers in a good-faith effort to maintain or restore discipline. Nagle allegedly reported the deprivations and resulting injuries to Gerry and other NHSP officials, however, they failed to remedy the problem or take any corrective action. For purposes of preliminary review, I find that Nagle has alleged Eighth Amendment excessive force claims against Gerry, Jorgenson and the four unnamed corrections officers.[7]

---

[7]If Nagle wishes to pursue claims against the unnamed corrections officers, he will have to obtain their full names

In addition, Nagle broadly alleges that his "grievances from as high as the Commissioner and Warden [have been] returned to no avail, as well as requests going through the chain of command." To the extent he alleges a claim against Wrenn, Commissioner of the NHDOC, I conclude that he has failed to state a cognizable claim against him. There is no indication in the record that Wrenn was adequately informed of the incident or that he condoned the actions by the subordinate officers. Because Nagle has failed to allege sufficient predicate facts to state a cognizable Eighth Amendment excessive force claim against Wrenn, I recommend dismissal of the claim against him.

B. <u>Retaliation</u>

Construed liberally, the complaint alleges that defendants

---

through discovery and appropriately move to amend the complaint. He can serve the named defendants with interrogatories to obtain the full names of the unnamed defendants pursuant to Fed. R. Civ. P. 33(a)(1) (providing, in part, that "[u]nless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts. . . . )

Pursuant to Fed. R. Civ. P. 33(b)(1) (A) and (B), the interrogatories must be answered by the party to whom they are directed or, "if that party is a public or private corporation, a partnership, an association, or a governmental agency, by any officer or agent, who must furnish the information available to the party." Nagle is further instructed to forward a separate summons to this court with each defendant's proper name.

retaliated against Nagle in reprisal for his First Amendment right to file administrative grievances. I liberally construe this claim to be brought against Gerry, Jorgenson and the four unnamed corrections officers.

To prevail on a First Amendment retaliation claim, a plaintiff must show "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Davis v. Goord, 320 F.3d 346, 352 (2d Cir. 2003). It is well-established that prisoners have a First Amendment right to petition the government for redress of grievances, and prison officials may not retaliate against prisoners for exercising that right. See Shabazz v. Cole, 69 F. Supp. 2d 177, 197 (D. Mass. 1999). See also Fogle v. Pierson, 435 F.3d 1252, 1264 (10th Cir. 2006) (noting that "[s]everal circuits have held that a prisoner's first amendment right to petition the government for redress of grievances encompasses the filing of inmate administrative appeals."); Walker v. Thompson, 288 F.3d 1005, 1008-09 (7th Cir. 2002) (holding that inmates are entitled under the First Amendment to file grievances and lawsuits, and officers may not retaliate

against them for exercising that right).

Construed liberally, the complaint in this action alleges that Nagle engaged in constitutionally protected conduct through the filing of administrative grievances. Defendants allegedly thwarted his attempts to exhaust administrative remedies and intercepted his confidential requests to the warden. Nagle further alleges that he has been "harassed, browbeaten and run in circles for these attempts at remedy." He appears to allege that defendants' retaliatory actions were motivated by his filing of administrative grievances and therefore were taken against him in reprisal for his exercise of First Amendment freedoms. He allegedly reported the deprivations and resulting injuries to Gerry and other NHSP prison officials, however, they failed to remedy the problem or take any corrective action. Accepting Nagle's allegations as true, which I must do at this preliminary stage of the proceedings, I conclude that he has stated a cognizable First Amendment retaliation claim against Gerry, Jorgenson and the unnamed corrections officers.[8]

---

[8] As explained above, if Nagle wishes to pursue claims against the unnamed corrections officers, he must obtain their full names through discovery and appropriately move to amend the complaint. He can serve the named defendants with interrogatories to obtain the full names of the unnamed defendants pursuant to Fed. R. Civ. P. 33(a)(1).

II.  State Law Claims

Nagle alleges that the same conduct that violated his federally protected rights to be free from use of excessive force and retaliation also violated his right to be free from intentional infliction of emotional distress under New Hampshire law.  He appears to allege that by using excessive force against him while he was suffering a seizure and by retaliating against him, or by condoning such actions, Gerry, Jorgenson and the unnamed corrections officers caused him to experience severe emotional distress and harm.

Nagle's state law claim allegedly stems from the injuries he sustained as a result of defendants' actions and, therefore, appears to be so related that it forms part of the "same case or controversy" of the Eighth Amendment excessive force claim and the First Amendment retaliation claim.  See  28 U.S.C. § 1367(a) (providing for supplemental jurisdiction over claims that are so related they form part of the same case or controversy). Accordingly, I conclude that this court may exercise supplemental jurisdiction over Nagle's state law claims for intentional infliction of emotional distress against Gerry, Jorgenson and the

14

four unnamed corrections officers.[9]

## Conclusion

For the reasons stated above, I find that Nagle has stated the following claims against Gerry, Jorgenson and the four unnamed corrections officers in their individual capacities: (1) Eighth Amendment claims alleging use of excessive force; (2) First Amendment retaliation claims alleging denial of the right to petition the government for redress of grievances; (3) and related state law claims alleging intentional infliction of emotional distress. I recommend dismissal of all remaining claims. Accordingly, by separate order issued simultaneously herewith, I authorize the above viable claims to proceed.

If this recommendation is approved, the claims as identified in this report and recommendation, will be considered for all purposes to be the claims raised in the complaint. If the plaintiff disagrees with the identification of the claims herein, he must do so by objection filed within ten (10) days of receipt

---

[9] As explained above, if Nagle wishes to pursue claims against the unnamed corrections officers, he must obtain their full names through discovery and appropriately move to amend the complaint. He can serve the named defendant with interrogatories to obtain the full names of the unnamed defendants pursuant to Fed. R. Civ. P. 33(a)(1).

of this report and recommendation, or he must properly move to amend the complaint.

Any further objection to this report and recommendation must be filed within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the district court's order. See 28 U.S.C. § 636(b)(1); see also Unauthorized Practice of Law Committee v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).

                                                James R. Muirhead
                                                United States Magistrate Judge

Date: December 18, 2008

cc:   Adam H. Nagle, pro se